IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOHN J. WALSH, JR.,<br><br>Plaintiff,<br><br>v.<br><br>HARDIKKUMAR PATEL, *et al.*,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:22-cv-03336-KMW-MJS<br><br>OPINION |

**Richard M. Wiener, Esq.**
One Greentree Centre, Suite 201
10000 Lincoln Drive East
Marlton, NJ 08053

*Counsel for Plaintiff*

**Todd J. Gelfand, Esq.**
BARKER GELFAND & JAMES
210 New Road, Suite 12
Linwood, NJ 08221

*Counsel for Defendants*

**WILLIAMS, District Judge:**

**I.   INTRODUCTION**

Plaintiff John J. Walsh, Jr. ("Plaintiff") was indicted in New Jersey state court on charges of obstruction, resisting arrest, aggravated assault on law enforcement officers, and terroristic threats. Based on the events arising from his arrest, Plaintiff initiated the instant action under 42 U.S.C. § 1983 against Mullica Township and three police officers—Hardikkumar Patel, Robert Winkel, and Antonio Lupinetti (collectively, "Defendants")—alleging that the officers violated his Fourth Amendment rights by unlawfully entering his home without a warrant or consent, arresting him without probable cause, and using excessive force to effectuate that arrest. Plaintiff has also asserted various state-law claims for negligence, assault and battery, and emotional distress.

During the pendency of this case, Plaintiff was admitted into New Jersey's Pre-Trial Intervention Program ("PTI")—a statewide diversionary program that allows certain criminal

offenders to avoid prosecution by completing rehabilitative conditions, after which their charges are dismissed. Upon Plaintiff's admission, Defendants moved for summary judgment, arguing that his participation in PTI barred his § 1983 claims under *Heck v. Humphrey*, 512 U.S. 477 (1994). At Plaintiff's request, the Court subsequently stayed this case pending his completion of the program.[1]

Since then, Plaintiff has successfully completed PTI, and the criminal charges against him have been dismissed. To date, the parties have not engaged in any formal discovery. Nonetheless, Defendants now renew their motion for summary judgment, again arguing that Plaintiff's claims are barred by *Heck* and its progeny. Plaintiff opposes the motion. Having carefully reviewed the parties' submissions, the Court concludes that summary judgment is premature at this stage. Accordingly, and for the reasons explained below, Defendants' motion shall be denied without prejudice to their right to renew it following discovery.

## II.   BACKGROUND

On the evening of June 4, 2020, Plaintiff was arrested at his home in Mullica Township, New Jersey. However, the facts leading up to and surrounding Plaintiff's arrest are far from clear. Although Defendants have answered the operative pleading, discovery has not yet taken place in this case, and so the record before the Court remains undeveloped. Defendants' motion largely relies on the Amended Complaint, as well as a limited set of documents submitted in connection with the PTI program. The Court's review of other submissions on the docket confirms that the parties are prepared to offer sharply conflicting versions of events. But for present purposes, the

---

[1] *See also Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) ("[I]t is within the power of the district court, and in accord with common practice, to stay [a] [§1983] action until [a] criminal case or the likelihood of a criminal case is ended.").

Court confines its recitation of the facts to the limited account on which Defendants have chosen to rely.[2]

The parties appear to agree that the events leading up to Plaintiff's arrest began around 11:30 p.m. when Plaintiff's wife, Lorie, and their children found him outside, face down in a pond, unconscious. (ECF No. 76-11, ¶¶ 1–2.) With storms in the area, the family initially feared he had been struck by lightning. (*Id.* ¶ 4.) Julianna, Plaintiff's daughter, called 911 and requested immediate assistance. (*Id.*) Shortly thereafter, Plaintiff regained consciousness and was assisted back into the house. (*Id.* ¶¶ 4–5.) Mrs. Walsh, a registered nurse, checked his vital signs and observed a large hematoma on the back of his head. (*Id.* ¶¶ 3, 5.) Suspecting that Plaintiff had fallen and injured his head, Mrs. Walsh began making arrangements to take him to the hospital herself. (*Id.* ¶¶ 4–5.) At her instruction, Julianna called 911 again and told the dispatcher that her father was breathing and talking, that her mother was tending to him, and that emergency assistance was no longer needed. (ECF No. 13, ¶¶ 24–25.) By that time, however, it appears that Officers Hardikkumar Patel, Robert Winkel, and Antonio Lupinetti of the Mullica Township Police Department had already been dispatched, and they arrived at the Walsh residence around 11:50 p.m. (*Id.* ¶ 27.)

According to affidavits later submitted in the state court proceedings by Mrs. Walsh and Julianna—and now relied upon by Defendants in support of their motion—the encounter unfolded as follows. The officers were initially met at the door by Julianna, who immediately told them that her father was fine, that she had "canceled" the 911 call, and that their assistance was no longer needed. (ECF No. 76-10, ¶¶ 2–3.) Julianna states that she "repeatedly asked the police to leave the

---

[2] To this end, the Court relies on the only documents cited to by Defendants' Statement of Material Facts (ECF No. 79), which are the Amended Complaint (ECF No. 13); two affidavits from Plaintiff's wife and daughter, which were submitted in the underlying criminal action (ECF Nos. 76-10, 76-11); and four pages of documents concerning Plaintiff's acceptance into and participation in the PTI program (ECF No. 76-12).

property," but that the officers refused, insisting that they make sure her father was okay. (*Id.* ¶ 4.) After calling for backup, the officers stated that they needed to speak to Julianna's parents or another adult. (*Id.* ¶ 4–5.) Julianna then asked the officers if they would settle by speaking with a neighbor if she called him, to which the officers allegedly agreed. (*Id.* ¶ 5.)

Julianna then stepped out of the house and onto the paved porch, closing the screen door behind her. (*Id.* ¶ 6.) Julianna "continued to tell the police to leave and to be careful with the dog inside." (*Id.*) As Julianna tells it, the officers then grabbed her arm and attempted to open the screen door to enter the house. (*Id.* ¶ 8.) Julianna protested, telling the officers to leave and that they could not come into the house, at which point the police allegedly told her that she was under arrest. (*Id.*) The police then passed through the entryway of the house. (*Id.*)

Plaintiff and Mrs. Walsh heard this argument from inside, prompting Plaintiff to yell, "Get the fuck off my property." (ECF No. 76-10, ¶¶ 8–9.) Plaintiff continued to tell the police to leave while he and Mrs. Walsh walked toward the doorway. (*Id.* ¶ 10.) According to Mrs. Walsh, the officers "immediately grabbed" Plaintiff, pulled him out of the house, and "threw him onto the ground on [the] lawn, right over the pavers." (*Id.*)

The gaps in this narrative should seem rather obvious, particularly given that Plaintiff was ultimately indicted on charges of (1) obstructing the administration of law or other government function, N.J. STAT. § 2C:29-1A; (2) terroristic threats, *id.* § 2C:12-13A; (3) resisting arrest, *id.* § 2C:29-2A(3)(A); (4) aggravated assault on law enforcement officers, *id.* § 2C:12-1B(5)(A); and (5) bias intimidation, *id.* § 2C:16-1A. While both Plaintiff and Defendants acknowledge the existence of these charges, neither side has explicitly identified or described the specific acts underpinning each of these charges.

### III. LEGAL STANDARD

Upon a proper motion, Federal Rule of Civil Procedure 56 instructs district courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if "its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute over a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

In terms of timing, Rule 56(b) states that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery," unless "a different time is set by local rule or the court orders otherwise." However, "[i]t is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). Under Rule 56(d), district courts may defer or deny a motion for summary judgment if a nonmovant shows that "it cannot present facts essential to justify its opposition." *See* Fed. R. Civ. P. 56(d)(1)–(3). "If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015).

### IV. DISCUSSION

As to the individual officers, Plaintiff brings claims under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights based on the officers' warrantless entry into his home,

his arrest without probable cause, and the use of excessive force. Because Plaintiff's criminal charges were dismissed following his admission into and successful completion of the PTI program, Defendants move for summary judgment under *Heck v. Humphrey*, 512 U.S. 477 (1994).[3]

In *Heck*, the Supreme Court recognized that § 1983 actions "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. It thus held that a plaintiff may not maintain a § 1983 action if success on such a claim would "necessarily imply the invalidity" of an underlying conviction or sentence—"unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. For *Heck* to apply, "it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.'" *Ramos-Ramirez v. Berwick Borough*, 819 F. App'x 103, 106 (3d Cir. 2020) (quoting *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007)). Where *Heck* does apply, the plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. This so-called "favorable termination" requirement exists to "prevent improper collateral attacks on convictions or sentences through money damages actions." *Garrett v. Murphy*, 17 F.4th 419, 426 (3d Cir. 2021).

A classic example occasioning a *Heck* challenge is where a plaintiff convicted of a crime brings a § 1983 claim alleging that officers fabricated or suppressed evidence used to secure that conviction. Absent other showings, such a claim would necessarily imply the invalidity of the

---

[3] Defendants also appear to move for summary judgment on a malicious-prosecution claim. The Court, however, finds no such claim asserted in the Amended Complaint, a conclusion that seems to be confirmed by the fact that Plaintiff makes no reference to it in his opposition.

conviction, since the judgment depended on the very evidence alleged to be falsified or withheld. Unless and until that conviction is overturned through proper channels, the plaintiff may not seek damages under § 1983. *See, e.g.*, *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 78 (3d Cir. 2018).

Here, the parties agree that Plaintiff's successful completion of PTI should be treated as a "conviction" for purposes of *Heck*.[4] Their dispute thus centers on whether success on Plaintiff's § 1983 claims would necessarily undermine, or be logically inconsistent with, the underlying charges. The problem, however, is that the analysis *Heck* demands cannot be undertaken on the record as it currently stands.

For starters, *Heck* does not automatically bar § 1983 claims predicated on the Fourth Amendment. *See Sanders v. Downs*, 420 F. App'x 175, 179 (3d Cir. 2011) ("*Heck* does not typically bar actions for Fourth Amendment violations."); *see also Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010) (observing that the "mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983"); *Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (recognizing that "*Heck* does not automatically bar [] claims of false arrest"). Rather, the inquiry is fact-based and case-specific. *See Gibson v. Superintendent of NJ Dep't of L. & Pub.*

---

[4] There is a recognized split among circuits as to whether a § 1983 plaintiff's participation in, or successful completion of, a pretrial diversion program constitutes a "conviction" within the meaning of *Heck*. Many circuits hold that it does not. *See, e.g.*, *Duarte v. City of Stockton*, 60 F.4th 566, 572 (9th Cir. 2023) ("Because the charges against [plaintiff] were dismissed, he was never convicted. And because there is no conviction that [plaintiff's] § 1983 claims would impugn, *Heck* is inapplicable."), *cert. denied*, 143 S. Ct. 2665 (2023); *see also S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 639 (6th Cir. 2008); *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022); *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1095 (10th Cir. 2009); *McClish v. Nugent*, 483 F.3d 1231, 1251 (11th Cir. 2007).

In this circuit, however, *Heck* has been applied to § 1983 claims notwithstanding the plaintiff's completion of a pretrial diversion program. *See Gilles v. Davis*, 427 F.3d 197, 201 (3d Cir. 2005); *Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154–55 (3d Cir. 2012) (applying *Heck* notwithstanding plaintiff's successful participation in Pennsylvania's Accelerated Rehabilitation Disposition program); *Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154–55 (3d Cir. 2012) (rejecting contention that *Heck* only applies to "convictions," and not to New Jersey's PTI program).

*Safety*, 411 F.3d 427, 449 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 182 (3d Cir. 2010). For each § 1983 claim challenged, courts must carefully determine whether the elements and allegations forming a particular claim would necessarily cast doubt on one or more of the charges for which the plaintiff was convicted. *See Ortiz*, 747 F. App'x at 77; *see also Wood v. Borough of Woodlynne*, 735 F. Supp. 3d 526, 531 (D.N.J. 2024) (assessing whether allegedly unlawful seizure was "temporally or conceptually indistinct from the crime for which the plaintiff was convicted").

Here, such an analysis is simply not feasible on the record as it currently stands. Although Plaintiff's charges are undisputed, neither side has clearly identified the conduct supporting any of those charges, or when in the sequence of events it allegedly occurred. Indeed, the only conduct Defendants point to before the officers initiated physical contact is Plaintiff's use of profanity. Yet they nevertheless seek summary judgment under *Heck* without explaining how Plaintiff's alleged conduct supported the charges, or how it relates to the officers' entry, their decision to arrest, or their use of force. Without a record clarifying these points, the Court cannot assess whether Plaintiff's claims would necessarily undermine the charges.

In opposition to Defendants' motion, Plaintiff submitted a Rule 56(d) affidavit, which only confirms what the record already demonstrates—that further discovery is necessary before *Heck* can be meaningfully or reliably applied.

## V.   CONCLUSION

For all of the reasons set forth above, Defendants' motion for summary judgment is denied without prejudice to their right to renew it following discovery.

Dated: September 29, 2025

                                           KAREN M. WILLIAMS
                                           U.S. DISTRICT COURT JUDGE